[No. 13940-5-II.    Division Two.    October 8, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. KURT JEFFREY ANGELONE, *Appellant.*

*Robert W. Huffhines, Jr.,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Philip A. Meyers, Deputy,* for respondent.

ALEXANDER, J. — Kurt Jeffrey Angelone appeals his conviction on three counts of indecent liberties. He contends that his statutory right to a speedy trial was violated as to two counts pursuant to the Interstate Agreement on Detainers. He also contends that his right to due process was violated as to the third count when the State was permitted to amend the information. We reverse the first two convictions and affirm the third.

On July 18, 1986, Angelone was charged in Clark County Superior Court with four counts of indecent liberties. On that same day a warrant for his arrest was issued. A detainer was also lodged against Angelone because he was then in custody in a federal correctional institution in Arizona.

On December 21, 1986, Angelone sent a letter to the clerk of the Clark County Superior Court requesting information about Washington law on the subject of "speedy trial". The clerk responded by letter and indicated that her office was not in a position to furnish legal advice to him. Angelone then sent another letter to the Clark County Superior Court, dated February 9, 1987, indicating that "I AM NOT REQUESTING FINAL DISPOSITION AND THAT I WILL CONTEST ANY TRANSFER TO YOUR JURISDICTION . . .". He followed this letter with several motions, including a "motion for discovery" and "a motion to inspect grand jury minutes". He also sought appointment of counsel.[1]

---

[1] Apparently the Clark County prosecuting attorney's office received the discovery motions and wrote back to Angelone indicating that it was under no obligation to comply with his requests. The request for assignment of counsel was apparently forwarded to a Clark County Superior Court judge who wrote Angelone and

On September 8 and September 22, 1987, in apparent contradiction of his earlier stated opposition to being transferred to Washington, Angelone sent letters to the Clark County Superior Court requesting that his case be scheduled for trial and demanding a "fast and speedy trial." A judge of the Clark County Superior Court responded to Angelone's letter, indicating that Angelone's case would not be set for trial until Angelone was in this state.

On October 28, 1987, Philip Meyers, a deputy prosecuting attorney for Clark County, sent a letter to the warden of the Arizona federal correctional institution in which Angelone was being housed. The letter stated, in pertinent part:

> Enclosed please find a copy of a Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer . . .

> This is to advise you that we are preparing all necessary papers under the Agreement of Detainers forms . . .[.]

Included with the letter was a document, signed by a superior court judge of Clark County, indicating that, pursuant to article 3(a) of the Agreement on Detainers and the prisoner's request, Washington was seeking custody of Angelone to stand trial in this state. A copy of that letter was sent to Angelone.

On October 30, 1987, Angelone sent a form entitled "Inmate Request to Staff Member" to his warden, indicating his receipt of Washington's request for *final* disposition of detainer." The warden responded to this request by informing Angelone in writing that "neither he [Angelone] nor the State of Washington had properly initiated disposition of the charges pending against him in Washington." The warden acknowledged that he had been made aware of Angelone's September 1987 requests for disposition of the detainer in the state of Washington and that, pursuant to those requests, the "appropriate paperwork and documentation is being forwarded to the prosecuting attorney, who will

---

told him that his request for appointed counsel would be considered when he personally appeared before the superior court of the State of Washington.

then request the Bureau of Prisons for your temporary custody." He further stated that "[y]ou may be assured that your request for final disposition of these pending charges in Clark County, Washington, is being handled in an expeditious and efficient manner."

On November 4, 1987, the inmates systems manager for the Arizona federal correctional institution sent out a memorandum "TO: All Concerned" indicating that Angelone's "offer of custody" had not been made at the request of the staff at the federal correctional institution and that Angelone had made no request to his unit staff for disposition. The memo also indicated that because the disposition request had not been properly initiated by Angelone, deputy prosecutor Meyers had been contacted and informed of the proper procedures for requesting custody of Angelone. A follow-up letter was sent to Meyers, containing the proper forms for requesting custody and indicating that Angelone was being transferred to the United States Penitentiary in Lewisburg, Pennsylvania.

In June of 1988, Angelone sent a "Petition for Writ of Habeas Corpus and or Mandamus" to Clark County Superior Court demanding that the charges pending against him be dismissed because the 180-day time for trial specified in RCW 9.100.010 had passed without his being tried. His petition was denied on the basis that it was "premature".

In July 1988, the Clark County Sheriff's office contacted federal officials and removed the detainer lodged against Angelone. At about the same time, the Clark County prosecuting attorney's office obtained a warrant for Angelone's arrest in Oregon. In November 1989, Angelone was transferred by federal officials to a halfway house in Oregon. On November 16, 1989, Angelone was arrested in Oregon on the outstanding warrant and was taken to the Clark County Jail. He was formally released from federal custody on December 28, 1989.

Angelone was arraigned in Clark County on January 24, 1990, and his trial was scheduled for March 19, 1990. At his

arraignment, Angelone specifically reserved the right to object to the date of his first appearance in court and to assert the denial of his right to a speedy arraignment and trial.

On February 16, 1990, the State filed an amended information in order to add a charge of statutory rape in the first degree (count 5) and another count of indecent liberties (count 6). Count 6 named a victim who had not been named in the counts charged in the original information.

On March 8, 1990, Angelone moved to dismiss the charges against him on grounds that the State had violated the provisions of RCW 9.100.010, the Interstate Agreement on Detainers act, and had denied him his Sixth Amendment right to a speedy trial. His motion was denied. Angelone waived his right to a jury trial and stipulated to facts sufficient to support a conviction against him on counts 1, 2, and 6. The trial court found him guilty of those counts and dismissed the remaining counts.

Angelone claims that his convictions should be reversed because he was not brought to trial "within 180 days on [*sic*] his demand for speedy trial and disposition of the charges." He asserts that the letters he wrote to the Clark County Superior Court on September 8 and 22, 1987, in which he demanded a "fast and speedy trial", were substantially equivalent to notice to the Clark County prosecutor of his place of imprisonment and constituted a request for final disposition of the detainers lodged against him.

Article 3(a) of RCW 9.100.010 provides, in part, as follows:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer... written notice of the place of his imprisonment and his request for a final disposition to be made of the ... information ...:* The

request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner . . ..

(Italics ours.)

Angelone correctly points out that the purpose of RCW 9.100.010 *et seq.* is to "encourage the expeditious and orderly disposition of [untried indictments] and determination of the proper status of any and all detainers . . .". Article 1; RCW 9.100.010. He contends that he complied with the act sufficiently to invoke the 180 days to trial requirement. Failure to try him within that time, he argues, should result in dismissal of the charge.

The State responds that Angelone's actions did not trigger the 180-day time to trial. It points to the fact that article 3(b) of RCW 9.100.010 requires the prisoner to give written notice and request for final disposition to the prison warden or other official having custody of him.[2] This, it argues, Angelone did not do. In that regard, the State relies on the fact that the warden of the federal corrections facility stated that Angelone had not complied with the article 3 requirements and that the State would have to file article 4[3] paper work to obtain custody of Angelone.

■ Under the Interstate Agreement on Detainers act, a "prisoner is required to inform the officials having custody of him of his desire for speedy disposition" before the 180-day speedy trial time is triggered under article 3(a) of RCW 9.100.010. *State v. Barefield*, 110 Wn.2d 728, 731, 756 P.2d 731 (1988). After those officials have been properly notified, however, it becomes their duty to provide the proper forms and to process the papers promptly. *State v. Barefield, supra.*

---

[2]Article 3(b) of RCW 9.100.010 provides:

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

[3]Article 4 of RCW 9.100.010 provides the process by which the appropriate officer of the jurisdiction lodging the detainer may have a prisoner made available for trial.

We conclude that Angelone complied with all of the requirements necessary to invoke the requirement that he be tried within 180 days. Upon receipt of the October 28, 1987, letter from the Clark County prosecutor's office, Angelone sent a form to his warden requesting "final disposition of a detainer." In his request he referred specifically to the October 28 letter, which had informed him of its receipt of his requests for a speedy trial and Clark County's requests for the proper paper work to begin article 3(a) proceedings. Angelone's request constituted written notice for final disposition "given or sent by the prisoner to the warden" as required by article 3(b) of RCW 9.100.010. As this letter indicated, the Clark County prosecuting attorney was fully aware of Angelone's requests for final disposition of the detainers lodged against him. Indeed, the letter of October 28 sent by the Clark County prosecutor's office indicated that this state believed Angelone had complied with the requirements of article 3(a) of RCW 9.100.010.

Once the prison officials received such notice, it became their duty to then process his request. *State v. Barefield*, 110 Wn.2d at 731. Consequently, as of October 30, 1987, the date Angelone sent the memo to his warden, he had properly notified the prison officials of his desire to have the outstanding detainers resolved. He was not arraigned until January 24, 1990, a date which was far beyond 180 days from the date he made his request for speedy trial. Thus, with respect to the charges in counts 1 and 2, Angelone was not afforded a trial within the time specified by statute.

■ Having reached that conclusion, we must next determine if dismissal is the proper remedy. Washington has declined to follow the rule adopted in some jurisdictions, that a violation of the 180-day time to trial should automatically result in dismissal. *Barefield*, 110 Wn.2d at 734-36. Rather, Washington has adopted a case-by-case approach where the bad faith, if any, of the prosecutor and the prejudice to the defendant are considered in determining if dismissal is appropriate. Here, even assuming no bad faith on the part of the prosecutor, the prejudice to Angelone is clear. Any oppor-

tunity he might have had to have his federal prison term run concurrently with a sentence on the Washington charges was lost due to the failure of the authorities to adhere to his requests for a speedy trial. This prejudice warrants reversal of and dismissal of counts 1 and 2.

Angelone's conviction on count 6, however, raises different issues. The charge underlying this conviction was filed on February 19, 1990, and there is no suggestion by Angelone that he is entitled to a dismissal of that charge pursuant to RCW 9.100.010. Angelone claims, rather, that the trial court erred in not dismissing count 6 on the basis that his due process right was violated. He does not rely on any statute or court rule insofar as his argument regarding count 6 is concerned. He cites only *United States v. Marion*, 404 U.S. 307, 324, 30 L. Ed. 2d 468, 92 S. Ct. 455, 465 (1971), in which the Court said:

> [T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to [a defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

The record we have been furnished is simply too sparse to allow us to make any determination about the State's motivation for its late filing of count 6. Angelone makes little argument in support of his argument that the conviction on count 6 should be dismissed for a denial of due process, other than saying the prosecutor's explanation for not filing the new charge "is not persuasive."[4] Nor does he demonstrate how he was prejudiced by the delay. This argument is not sufficient and we will not assume a denial of due process merely because of the delay. There is no indication that the delay was "an intentional device to gain tactical advantage"

---

[4]The State explained that an investigation in August 1986, 1 month after the original information was filed, led to the information upon which the additional charges were based.

over Angelone. The constitutional violation has not been shown.

Angelone's conviction on the charges in counts 1 and 2 is reversed. His conviction on count 6 is affirmed.

MORGAN, A.C.J., and SEINFELD, J., concur.