[No. 31372-3-II.   Division Two.   September 27, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. ANIBAL OLMOS, *Appellant*.

*David Schultz*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *James E. David, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Anibal Olmos appeals his conviction for first degree escape, arguing that the State violated his

right to a speedy disposition of this charge under state criminal rules and the interstate agreement on detainers. Because any delay in returning Olmos for trial on the escape charge was largely due to his deceptive use of aliases, we hold that the State did not violate his speedy trial rights. Accordingly, we affirm.

## FACTS

¶2 On January 29, 1990, Anibal Olmos pleaded guilty to delivery of cocaine in King County Superior Court. Olmos used the name "Eleazar Valladres-Olnos" and gave his birth date as January 26, 1947. Ex. 1. The State assigned Olmos Department of Corrections (DOC) and federal identification numbers based on this name.

¶3 After his release, police again arrested Olmos for cocaine delivery. He pleaded guilty, this time using "Jorge Estrada" as his name and January 10, 1950, as his birth date. Clerk's Papers (CP) at 51. He was assigned the identification numbers for the real Jorge Estrada on this conviction. DOC then assigned Olmos to the Larch Mountain facility in Clark County, Washington on July 26, 1991; Olmos escaped on August 3. DOC issued an arrest warrant for "Jorge Estrada," notified the Clark County Sheriff's Office, and provided it with the "Estrada" identification numbers.

¶4 For several years, various law enforcement agencies informed Clark County that they had arrested individuals with the name "Jorge Estrada" and the identification numbers associated with that name. But in each case, the sheriff's office and DOC determined that the individual was not the person they sought.

¶5 In 1998, Olmos pleaded guilty to a federal immigration crime in Utah under the name "Anibal Olmos." Ex. 8. The court sentenced him to 77 months to be served in a Florida institution.

¶6 In August 1999, Lin Whitney, the supervisor of Clark County's records, warrants, and extradition unit asked

Larch Mountain and DOC to determine the correct identity of the individual wanted on the escape charge. Linda Wade, a Larch Mountain records manager, discovered that "Estrada" and "Valladres-Olnos" were the same person, and she began removing the incorrect references and identification numbers, and incorporating the correct records and identification numbers.

¶7 In July 2000, Wade notified the Clark County Prosecutor of these identification problems. Clark County removed Estrada's arrest warrant from state and federal databases at various times until the County could properly identify Olmos. On November 16, 2001, Whitney received the correct identification numbers and reentered the warrant in the state and federal databases.

¶8 The same day, Whitney requested a printout from the National Crime Information Center's (NCIC) computer database. The first page of this printout listed Olmos's aliases and correct federal, state, and DOC identification numbers. The subsequent pages listed his criminal history. Included in this history was the information that the Florida federal prison had received Olmos on July 7, 1998. Whitney's office did not act on this NCIC information.

¶9 Whitney testified that she and her staff do not research criminal history because they use the NCIC database only to obtain identifying information. She testified that she and her co-workers would not be able to perform their jobs if they attempted to locate individuals by researching their criminal histories. According to Whitney, the County usually locates individuals when an out-of-state or federal agency runs a database check and notifies Clark County. Typically, state and federal corrections facilities run warrant checks on their prisoners before releasing them.

¶10 On August 5, 2003, the Federal Bureau of Prisons notified Clark County that it had Olmos in custody in Florida. Clark County requested a detainer on Olmos; federal authorities confirmed it the next day. Olmos was booked into Clark County jail on October 15, 2003.

¶11 On January 19, 2004, Olmos moved to dismiss his first degree escape charge, arguing that Clark County had violated his speedy trial rights under State criminal procedure rules and under the interstate agreement on detainers, chapter 9.100 RCW. The trial court denied Olmos's motion because it would have taken an "extraordinary effort" by Clark County to review complete criminal histories. Report of Proceedings (RP) at 127-28. The court also found that it would be counter to the policies behind the speedy trial rule and the interstate detainer agreement to allow a defendant who had concealed his identity to benefit from these rules. Olmos conceded that Washington was not at fault for failing to locate him between 1991 and 2001. But he argued that by November 2001, the County had the means to determine his whereabouts and its failure to do so violated his speedy trial rights.

¶12 The trial court ruled that Olmos's deception caused the entire delay from the information filing until his arraignment. The court convicted Olmos on stipulated facts.

## ANALYSIS

### I. CrR 3.3

¶13 The State argues that the current versions of CrR 3.3 and other court rules apply instead of the pre-2003 amendment versions. The trial court did not apply the current rule because it concluded that Olmos would not be entitled to dismissal even under the former rules. We may affirm the trial court on any basis the record supports. *State v. Bunner*, 86 Wn. App. 158, 161, 936 P.2d 419 (1997).

¶14 The State argues that the amended version of CrR 3.3, which took effect September 1, 2003, starts the 60- or 90-day speedy trial period on the arraignment date. Olmos initially appeared in front of the court at his arraignment on October 16, 2003. Amended CrR 4.1 provides in part:

The defendant shall be arraigned not later than 14 days after that appearance which next follows the filing of the information or indictment, if the defendant is not detained in that jail or subject to such conditions of release. *Any delay in bringing the defendant before the court shall not affect the allowable time for arraignment, regardless of the reason for that delay.*

CrR 4.1(a)(2) (emphasis added).

¶15 These amendments superseded the constructive arraignment principles in *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976), and *State v. Greenwood*, 120 Wn.2d 585, 845 P.2d 971 (1993). In the Time for Trial Task Force's Report, the drafters of the amended court rules explained:

> The task force's recommendation on *Striker/Greenwood* is also reflected in its proposal for CrR 4.1, on the time for arraignments. The task force proposes adding a sentence to CrR 4.1(a) indicating that any delay in bringing out-of-custody defendants before the court shall not affect the defendant's allowable time for arraignment, "regardless of the reason for that delay." With this sentence, the task force is stating its intent that the *Striker/Greenwood* standards be replaced with the proposed due-diligence standards expressed in CrR 2.2.

4A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, at 19 (6th ed. Supp. 2005).

¶16 The *Striker* rule, clarified in *Greenwood*, imposed a constructive arraignment date 14 days after the State filed the information in the event of an unnecessary delay in initially bringing the defendant before the court. *See Greenwood*, 120 Wn.2d at 599-600. But any time in which the State acted in good faith and with due diligence to bring the defendant before the court was excluded from the speedy trial time. *Greenwood*, 120 Wn.2d at 601 (citing *State v. Miffitt*, 56 Wn. App. 786, 792, 785 P.2d 850 (1990)). And if the defendant caused any delay through fault or connivance, the delay was excluded from the speedy trial time. *Greenwood*, 120 Wn.2d at 600 (citing *Striker*, 87 Wn.2d at 872).

¶17 We hold that the amended speedy trial rules apply to Olmos. A new criminal court rule applies to

pending cases on its effective date, regardless of when the case began, unless in the court's opinion the former rule should apply in the interests of justice. CrR 1.3(b); *see, e.g.*, *State v. Jack*, 87 Wn.2d 467, 468-69, 553 P.2d 1347 (1976) (applying newly-adopted speedy trial rules to case that began before rules were adopted); *State v. Matlock*, 27 Wn. App. 152, 157, 616 P.2d 684 (1980) (applying amended speedy trial rule to a case commenced before the rule was amended). Moreover, a new rule of criminal procedure applies to all cases pending on direct review or that are not yet final, with no exception for cases in which the new rule constitutes a clear break from the past. *State v. Evans*, 154 Wn.2d 438, 444, 114 P.3d 627 (2005) (citing *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992)).

¶18 The trial court heard Olmos's motion on January 22, 2004. Under the amended rules, any delay in bringing Olmos before the court does not affect his speedy trial and arraignment times.

## II. Motion to Dismiss

¶19 Olmos argues that the interstate agreement on detainers (IAD) affords additional speedy trial guaranties. Assuming without deciding that the IAD does provide speedy trial guaranties beyond those contained in the criminal rules, Olmos's argument still fails.

¶20 Under the IAD, when Washington has charges pending against a prisoner incarcerated in another jurisdiction, it may ask that jurisdiction not to release the prisoner before his Washington charges are resolved. RCW 9.100.010, Art. III(a). After Washington files its detainer, the prisoner may demand that Washington bring him to trial within 180 days. RCW 9.100.010, Art. III(a). This period begins to run when the prisoner's demand has actually been delivered to the court and the prosecuting attorney who filed the detainer. *Fex v. Michigan*, 507 U.S. 43, 52, 113 S. Ct. 1085, 122 L. Ed. 2d 406 (1993). The IAD

does not require Washington's prosecuting authorities to file detainers; a prisoner's ability to exercise his speedy trial rights depends on the prosecutor's optional filing of a detainer. *State v. Anderson*, 121 Wn.2d 852, 861, 855 P.2d 671 (1993). But failure to use the optional IAD procedure does not relieve the State of its obligation to comply with the speedy trial time limits in CrR 3.3. *State v. Simon*, 84 Wn. App. 460, 464, 928 P.2d 449 (1996) (citing *State v. Peterson*, 90 Wn.2d 423, 431, 585 P.2d 66 (1978)).

¶21 The time during which a defendant is incarcerated in an out-of-state or federal prison or jail is excluded from the speedy trial period. CrR 3.3(e)(6). But to avail itself of this exception, the State must exercise good faith and due diligence in attempting to return a defendant to Washington. *Simon*, 84 Wn. App. at 464 (citing *Anderson*, 121 Wn.2d at 858).

¶22 In Washington, violation of the IAD's 180-day time limit does not require automatic dismissal of the charges. *State v. Angelone*, 67 Wn. App. 555, 561, 837 P.2d 656 (1992) (citing *State v. Barefield*, 110 Wn.2d 728, 734-35, 756 P.2d 731 (1988)). Instead, in each case we consider the prosecutor's bad faith, if any, and the prejudice to the defendant. *Angelone*, 67 Wn. App. at 561. A defendant may be prejudiced if his ability to prepare for trial is impaired or his chance to serve partially concurrent sentences is lost. *Simon*, 84 Wn. App. at 464.

¶23 Olmos concedes that Washington was not at fault from the time of his escape until November 2001. The question is whether the State's failure to locate Olmos from the time it received his correct criminal history on November 16, 2001, until August 5, 2003, (when the federal agency notified Clark County that Olmos was in custody in Florida) amounts to a lack of good faith and due diligence and whether he was prejudiced.

¶24 The State's failure to inquire into a defendant's whereabouts for almost a year may show a lack of due diligence. *Simon*, 84 Wn. App. at 465-66. In *Simon*, Washington authorities interviewed Simon after his arrest in

Oregon. California had placed a hold on Simon immediately after his arrest in Oregon. Because California's charges were more serious, Washington deferred to California after an Oregon court convicted Simon in February 1994. Washington intended to file a detainer in either California or Oregon, as appropriate. In April, Simon requested speedy disposition of his California charges and asked the Oregon authorities to inform him of any other detainers; there were none. The California charges were dismissed, and Simon returned to Oregon to complete his sentence in December. Washington did not know that Simon was still in an Oregon prison because it had not contacted Oregon or California from March 1994 until December 1995. On December 13, 1995, Washington filed a detainer on Simon. *Simon*, 84 Wn. App. at 462-63.

¶25 The Court of Appeals held that good faith and due diligence required the State to inquire whether Simon was available to stand trial in Washington. *Simon*, 84 Wn. App. at 466. While it did not precisely define what constitutes due diligence, "the failure to make any inquiries for nearly a year after [Simon] was available to stand trial is not." *Simon*, 84 Wn. App. at 466.

¶26 But *Simon* is distinguishable. There, the Washington authorities knew that the defendant was incarcerated in either Oregon or California. And Simon had not used aliases to frustrate the prosecutor's ability to locate him. Here, Olmos used different names and birth dates on each arrest. Although Clark County could have tracked Olmos to Florida by searching his criminal history, it was not obligated to do so. We hold that where the defendant uses deception to conceal his true identity and location, he cannot claim that the State failed to act with due diligence in unraveling his deceit. Accordingly, even if the IAD affords speedy trial protections in addition to the criminal rules, Clark County did not violate them.

## III. Extradition

¶27 In a one-page statement of additional grounds,[1] Olmos claims:

> My extradition was <u>illegality</u> [sic] made; and my attorney "Therese Lavallee" refuse [sic] to argue that <u>legal error</u>. I myself explicated [sic] to Judge <u>Nichols</u> and he did not give me an answer.

Statement of Additional Ground at 1.

¶28 At trial, Olmos testified that:

> [Clark County authorities] came and they handcuffed me and I asked them who were they. They didn't show me any order from any judge of extradition. I didn't sign any extradition because they didn't show me any paper indicating who they were. It seemed like it was a kidnapping and I don't think that that's legal.

RP at 74.

¶29 But the record shows that a commissioned officer of the Clark County Sheriff's Office executed the arrest warrant on Olmos at the federal prison in Florida on October 15, 2003. The trial court found, as an undisputed fact, that "[n]o claims are raised as to the propriety of the action taken to return Defendant him [sic] after the August 5, 2003 Detainer was lodged, as a result [the] chronology and findings of these events are not necessary." CP at 54. Olmos's argument that his extradition was illegal fails.

¶30 Affirmed.

MORGAN and HOUGHTON, JJ., concur.

---

[1] RAP 10.10.