[No. 77122-7.  En Banc.]
Argued March 2, 2006.    Decided August 17, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. MONTIE EUGENE WELKER, *Petitioner*.

*David Schultz*, for petitioner.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 BRIDGE, J. — Montie Welker, a/k/a Montie Welver, was residing in the Multnomah County jail in Oregon when he was charged with first degree burglary and first degree robbery in Washington. He now argues that his burglary conviction should be reversed because he did not receive a timely trial. The interstate agreement on detainers (IAD) establishes a statutory scheme whereby IAD signatories, including Washington and Oregon, are required to resolve, within 180 days, outstanding charges against out-of-state prisoners and detainers based on untried indictments, informations, or complaints. RCW 9.100.010. Welker claims that a prosecutor has a duty of good faith and due diligence to utilize the IAD by filing a detainer against an incarcerated defendant when the prosecutor knows in whose juris-

diction the defendant is held. Welker additionally argues that the prosecutor did not meet that duty here and that the prosecutor's failure resulted in prejudice to Welker.

¶2 We agree that a prosecutor has a duty of good faith and due diligence to utilize the IAD when he knows in whose custody an incarcerated defendant is held. In this case, we find that although the prosecutor did not act in bad faith, he failed to act with due diligence. However, we do not agree that the lack of due diligence prejudiced Welker. Accordingly, we affirm his conviction.

I

Facts and Procedural History

¶3 In November 2001, Welker armed himself with a gun and forced his way into a Vancouver, Washington home, where he stole jewelry and other items. *State v. Welker*, 127 Wn. App. 222, 225, 110 P.3d 1167 (2005). One week later, the victim identified Welker in a police lineup. On December 17, 2001, the Clark County prosecutor's office charged Welker by information with first degree burglary and robbery, and a warrant for his arrest was issued on the same day. At that time, however, Welker was incarcerated on unrelated charges in the Multnomah County jail in Portland, Oregon. At the time the arrest warrant was issued by Clark County, the county was aware that Welker was in custody in Oregon. Welker was informed of the arrest warrant.

¶4 In January 2002, the Clark County prosecutor received a motion for discovery from Welker regarding his burglary and robbery charge. In response, the Clark County prosecutor sent Welker a letter informing him that it would not provide discovery or discuss a possible plea agreement until Welker was arraigned in Clark County. In January and March 2002, Welker pleaded guilty to the Oregon charges and was sentenced to more than two years in the Multnomah County jail.

¶5 On three separate occasions, Welker sent requests for resolution of his Washington charges to Multnomah County jail officials: in December 2001, July 2002, and December 2002. Multnomah County evidently did not respond to his first request. In July 2002, an Oregon official advised Welker that no action could be taken on his request until Clark County lodged a detainer against him with Multnomah County. In response to his December 2002 request, Welker was advised by a jail official that he would be transferred to Washington upon completion of his Oregon sentence.

¶6 On August 13, 2003, Welker was transported to Clark County and arraigned. He moved to dismiss the charges against him, arguing that the Clark County prosecutor's failure to comply with the IAD violated Welker's right to a speedy trial. The trial court denied the motion, reasoning that Welker did not put Clark County on notice that he wished to exercise his rights under the IAD and that it was not clear the IAD even applied to county jail inmates. A bench trial on stipulated facts followed, and Welker was convicted of first degree burglary, the prosecutor having withdrawn the first degree robbery charge prior to trial. Welker was sentenced to 90 months, with a credit for time served between his August 13 arraignment and his November 2003 sentencing.

¶7 Welker appealed his conviction, arguing that the prosecutor's failure to lodge a detainer against him under the IAD violated a good faith and due diligence requirement.[1] The Court of Appeals affirmed Welker's conviction, concluding that good faith and due diligence did not require the prosecutor to file a detainer because Welker was not

---

[1] Before the Court of Appeals, Welker also argued that the Clark County arrest warrant delivered to him in December 2001 constituted a detainer under the IAD and that because a detainer was lodged against him, his repeated requests for disposition under the IAD should have been forwarded to Clark County. The court concluded that an arrest warrant is not a detainer and that under the IAD, a defendant may not exercise his speedy trial right until a detainer is filed against him. Welker petitioned this court for review on whether the arrest warrant constituted a detainer, but we granted review on the good faith and due diligence question only.

" 'amenable to process.' " *Welker*, 127 Wn. App. at 229-30. The court reasoned Welker was not amenable because Clark County had not received notice of Welker's IAD request and because an Oregon policy apparently precluded application of the IAD in Oregon to jail inmates, and therefore any detainer filed by Clark County would not have been honored by Oregon. Welker petitioned this court for review, which we granted.

## II

### Analysis

¶8 The IAD is an interstate compact designed to address problems that may arise when an individual is incarcerated in one jurisdiction while also facing charges in another jurisdiction. RCW 9.100.010 (art. I of IAD). Washington became a signatory to the IAD in 1967, and it is codified at RCW 9.100.010.[2]

¶9 In order to place a "hold" on a defendant incarcerated in a foreign jurisdiction, a home jurisdiction may lodge a detainer against the defendant, saving the home jurisdiction's place in line to prosecute the defendant. The IAD then provides for the transport of incarcerated defendants from a "sending" jurisdiction to a "receiving" jurisdiction so that a defendant may face pending charges in the receiving jurisdiction, which is the jurisdiction that filed the detainer against the defendant. *See* RCW 9.100.010.

¶10 There are several steps in the process to trigger a defendant's rights under the IAD. First, the receiving state lodges a detainer against the defendant in the foreign sending state. RCW 9.100.010 (art. III(a) of IAD). Then, penal officials in the sending state must inform the defendant of the detainer against him and inform him of his right to request final disposition of those charges in the receiving state under the IAD. RCW 9.100.010 (art. III(c) of IAD).

---

[2] Forty-seven other states and the federal government are signatories of the compact. Mississippi and Louisiana are not party states.

Finally, upon notice of the detainer, the defendant himself must invoke his IAD rights by causing the appropriate request to be delivered to the court and the prosecutor of the county where the receiving state's charges are pending. RCW 9.100.010 (art. III(b) of IAD). From the time the prosecutor receives that request, the prosecutor's office then has 180 days to bring the defendant to trial in the receiving state. *Fex v. Michigan*, 507 U.S. 43, 52, 113 S. Ct. 1085, 122 L. Ed. 2d 406 (1993); *State v. Morris*, 126 Wn.2d 306, 313, 892 P.2d 734 (1995).

¶11 Although the IAD is an interstate compact, and thus ultimately a matter of federal law, *Morris*, 126 Wn.2d at 313 n.4, where the United States Supreme Court has not ruled on a particular question concerning the IAD, Washington courts are free to interpret the IAD's availability and application. *See, e.g., State v. Anderson*, 121 Wn.2d 852, 855 P.2d 671 (1993); *Morris*, 126 Wn.2d at 313-14. Thus, Washington courts have construed the IAD so that its use is consistent with the speedy trial requirement of our Criminal Rules (CrR). *Anderson*, 121 Wn.2d at 864; *State v. Hudson*, 130 Wn.2d 48, 56, 921 P.2d 538 (1996).

¶12 CrR 3.3(b) guarantees Washington defendants a right to speedy trial within a specific time frame. Under CrR 3.3(e)(6), time spent incarcerated in a foreign jurisdiction is excluded from that time frame. However, the IAD is a mechanism by which a defendant's speedy trial right under CrR 3.3(b) is ensured.[3] *Anderson*, 121 Wn.2d at 858. Thus, despite CrR 3.3(e)(6), a violation of the IAD may mean a defendant's foreign jurisdiction time is *included* in his speedy trial calculation, resulting in a corresponding violation of the defendant's speedy trial right under CrR 3.3(b). *Id.* at 864. Although under the IAD there is no statutory duty of good faith and due diligence imposed on prosecutors to bring a defendant to trial, to the extent that

---

[3] There have been several amendments to CrR 3.3 over the years, and the rules implicated by the IAD have at various times been found under different rule numbers. Therefore, many of the cases cited in this opinion actually concern differently numbered rules that are nonetheless textually the same or similar to our current CrR 3.3(b) and 3.3(e)(6).

the IAD and CrR 3.3(b) are interrelated, such a duty is impliedly imposed on prosecutors. *Id.* The imposed duty ensures that the IAD remains a vehicle for complying with defendant's speedy trial rules under Washington court rules. *Id.*; *Hudson*, 130 Wn.2d at 56.

¶13 But unlike a violation of CrR 3.3, a technical violation of the time limit in the IAD does not result in *automatic* dismissal of a defendant's conviction. *State v. Barefield*, 110 Wn.2d 728, 734-35, 756 P.2d 731 (1988). Instead, Washington reviews challenges under the IAD on a case-by-case basis, considering whether a prosecutor acted in good faith and with due diligence and, if not, whether the violation resulted in prejudice to the defendant. *Id.*; *State v. Olmos*, 129 Wn. App. 750, 758, 120 P.3d 139 (2005). Thus, we review Welker's challenge under this standard.

¶14 A. *Good Faith and Due Diligence.* As noted above, although prosecutors are not statutorily required under the IAD to file a detainer against a defendant, a defendant may not file a valid request for speedy disposition under the IAD *until* a detainer is lodged against him. *See Anderson*, 121 Wn.2d at 861. Therefore, we held in *Anderson* that in certain contexts, good faith and due diligence require prosecutors to utilize the IAD by filing detainers against defendants.

> [We conclude] that fundamental fairness requires that Washington prosecuting authorities act in good faith and with due diligence in bringing a defendant to trial in this state . . . .
>
>  . . . .
>
> [Former speedy trial rules implicitly require] that prosecuting authorities act in good faith and exercise due diligence in attempting to obtain a defendant's presence for trial in the state of Washington *where the defendant is known to be detained in jail or prison outside the state of Washington or in a federal jail or prison.*

*Id.* at 864-65 (emphasis added). Thus, not only does *Anderson* require prosecutors to exercise good faith and due diligence in utilizing the IAD, it also repeatedly indicates

that a prosecutor's mere knowledge of an incarcerated defendant's whereabouts prompts the good faith and due diligence duty to file a detainer. *Id*. at 863-65.[4] Contrary to the reasoning of the courts below, *Anderson* stands for the proposition that a defendant need *not* request disposition under the IAD in order to trigger a prosecutor's implied duty of good faith and due diligence. Instead, the prosecutor's duty is triggered when he has actual knowledge of an incarcerated defendant's whereabouts in a foreign penal institution.[5]

¶15 IAD challenges are reviewed on a case-by-case basis to determine if a prosecutor failed to exercise good faith and due diligence and, if so, whether the defendant was prejudiced. *See Barefield*, 110 Wn.2d at 734-35. Here, it is undisputed that Clark County had actual knowledge of Welker's incarceration and whereabouts at the Multnomah County jail but did not file a detainer. Clerk's Papers (CP) at 23.2. Nevertheless, the record indicates the prosecutor did not act in bad faith. There is neither claim nor evidence that the prosecutor engaged in misfeasance or malfeasance. However, we find that the prosecutor did fail

---

[4] *Anderson*'s conclusion on this point is sound. Since a defendant cannot technically request disposition under the IAD *until* a detainer is filed, it is unreasonable to require a defendant to file a meaningless request for disposition in order to prompt the filing of a detainer, particularly because he may not even know of his IAD rights until he is advised that there is a detainer against him. Thus, a prosecutor's knowledge of an incarcerated defendant's whereabouts may be gained by a preemptive request from the defendant for disposition under the IAD, but it may also be gained by a communication between the prosecutor and the defendant on other matters or communication about the defendant between the prosecutor and the foreign institution in which the defendant is housed. In any event, *Anderson* does not indicate that the *only* way to trigger a good faith duty to file a detainer is via a preemptive request from the defendant for disposition under the IAD.

[5] However, once a detainer is filed, it is incumbent upon a defendant to start the clock ticking on the 180-day IAD time limit by ensuring his IAD request is received by the appropriate county prosecutor in the receiving state. *Morris*, 126 Wn.2d at 313; *Fex*, 507 U.S. at 52 (180-day limit begins upon *receipt* by the prosecutor). Prosecutors are also not required to seek out an at-large defendant in order to file a detainer against him. *State v. Stewart*, 130 Wn.2d 351, 365, 922 P.2d 1356 (1996). Good faith and due diligence in filing detainers may not even require prosecutors to seek out an incarcerated defendant when they have no actual, personal knowledge of the incarcerated defendant's whereabouts. *Olmos*, 129 Wn. App. at 754, 759.

to act with due diligence. The prosecutor argues his lack of due diligence is excusable because in previous IAD dealings with Oregon involving unrelated defendants, Oregon informed Clark County that Oregon does not apply the IAD to jail inmates, only to state and federal prison inmates. CP at 43, 58-59; Br. of Resp't at 4. But nothing in the record indicates the same would have been true in this case.[6] The prosecutor's failure to at least file the detainer, regardless of what would have happened had he done so, amounts to a lack of due diligence on his part.

¶16  B. *Prejudice*. When a prosecutor has acted in bad faith or without due diligence under the IAD, we consider whether the defendant suffered prejudice. *See Olmos*, 129 Wn. App. at 758. Here, despite the prosecutor's lack of due diligence, we nevertheless cannot conclude that Welker suffered prejudice. As the State notes, there is no evidence Welker was denied the chance to participate in rehabilitation programs as a result of his trial date. Br. of Resp't at 6. Nor is there evidence that the delay cost Welker the ability to construct an effective defense. Finally, although Welker asserts that his delayed trial resulted in the loss of a concurrent sentence, nothing in the record or in briefing indicates that this is so.[7] Our decisions cannot rest

---

[6] Indeed, courts are split on whether the IAD applies to jail inmates. *Compare, e.g., Escalanti v. Superior Court*, 165 Ariz. 385, 387, 799 P.2d 5 (Ct. App. 1990) (IAD applies), *with, e.g., State v. Wade*, 105 Nev. 206, 210, 772 P.2d 1291 (1989) (IAD does not apply). The State has not presented any Oregon *law* indicating a detainer filed on a jail inmate will not be honored, but rather relies on a 2003 letter from counsel for the Oregon governor stating Oregon's reluctance to honor IAD detainers filed on jail inmates. In turn, the letter references no Oregon legal authority but explains that the position of the governor's office was informed by a manual from the National Association of Extradition Officials (NAEO) and discussion with NAEO attorneys. The NAEO manual concedes that this is an unsettled question of law. CP at 43, 62-63.

[7] Courts in this state have recognized that prejudice may result if the opportunity for at least a partially concurrent sentence has been lost as a result of the prosecution's failure to file a detainer. *Anderson*, 121 Wn.2d at 862; *Olmos*, 129 Wn. App. at 758; *State v. Simon*, 84 Wn. App. 460, 464, 928 P.2d 449 (1996); *State v. Angelone*, 67 Wn. App. 555, 561-62, 837 P.2d 656 (1992).

on unsubstantiated assertions.[8] *See In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

## III

## Conclusion

¶17 We agree with the defendant that generally a prosecutor has a good faith and due diligence duty to file a detainer under the IAD when the prosecutor knows of an incarcerated defendant's whereabouts. Reviewing Welker's claim, as we must, with special attention to its particular facts, we hold that the Clark County prosecutor's failure to file a detainer here was not done in bad faith but that he failed to act with due diligence. However, we cannot conclude that Welker was prejudiced. Therefore, his conviction stands. Accordingly, we affirm the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

---

[8] In briefing, Welker assumed the burden of proof for showing prejudice. The State also presented argument refuting Welker's prejudice claim. Br. of Resp't at 6. We note that this court has yet to decide who carries the burden of proof in an IAD challenge. *See Barefield*, 110 Wn.2d at 735 (finding it unnecessary to visit the prejudice prong of defendant's IAD claim because there was no showing of bad faith but citing case law from other jurisdictions indicating the State must show the defendant was not prejudiced by the IAD delay). The parties here neither petitioned this court on that question nor briefed it before us, and we therefore do not consider it.