# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75230-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ARTURO SPENCER MARTIN, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 21, 2016 |
| | ) | |

LEACH, J. — Arturo Martin appeals his conviction and sentence for second degree assault. He claims that a 15-month delay in bringing him to trial violated his constitutional speedy trial rights and the interstate agreement on detainers (IAD).[1] Also, he claims that he did not receive effective assistance of counsel due to an alleged conflict between him and his trial counsel. Because most of the trial delay resulted from continuances requested by defense counsel to prepare for trial and sentencing, the delay did not violate Martin's speedy trial rights. The delay did not violate the IAD because it was the result of reasonable and necessary continuances granted for good cause shown in open court. And, because Martin does not show that his attorney had a conflict of interest, his ineffective assistance of counsel claim fails. We therefore affirm Martin's conviction.

---

[1] RCW 9.100.010.

Martin also claims that a 1983 California second degree burglary conviction should not have been included in his offender score calculation. Because the California conviction is factually comparable to Washington's second degree burglary statute, the trial court properly included it. We affirm Martin's sentence.

FACTS

In February 2012, the State charged Arturo Martin with second degree assault with a domestic violence aggravator, felony harassment, and interference with the reporting of domestic violence. These charges arose out of events occurring in Washington in December 2011. The court issued a bench warrant in connection with these Washington offenses, but law enforcement could not find Martin.

In December 2012, the State of Wyoming charged Martin with several crimes. In March 2013, Martin pleaded guilty to those Wyoming crimes and was sentenced to three to five years' confinement in a Wyoming Department of Corrections facility.

On January 9, 2014, Martin requested disposition of his Washington charges. In May 2014, while still serving his Wyoming sentence, Martin was extradited to Washington state. The trial court arraigned him on May 7 and set trial for June 30, 2014.

At a June 12 hearing, Martin's assigned defense counsel, Mark Quigley, requested a trial continuance to provide more time to prepare and to investigate Martin's numerous out-of-state convictions. Over Martin's objection, the trial court granted the request and set a new trial date for September 18, 2014.

In August 2014, the State filed a persistent offender notice. Defense counsel requested another continuance to address the persistent offender allegation, do a comparability analysis, and prepare for trial. The trial court found good cause for the continuance and rescheduled trial for January 29, 2015.

On January 29, the parties requested a third continuance so the defense could interview the victim, who had just been located. The court also granted Martin's request to proceed pro se. Although Martin refused to sign the continuance order, he admitted he was not ready for trial and needed time to review discovery. The court set a new trial date for February 19, 2015.

Before granting pro se status, the trial court conducted a lengthy colloquy but did not make an express finding that Martin had knowingly, intelligently, and voluntarily waived his right to counsel. On February 12, the State requested a continuance so the trial court could supplement the record supporting its order allowing Martin to act pro se. Finding good cause, a different judge continued the trial until February 26. On February 20, the trial court reaffirmed that Martin could proceed pro se and permitted him to have Quigley as standby counsel.

On February 12, Martin moved to dismiss the case for violation of the time requirements of the IAD. The court denied the motion, finding that the continuances were "necessary and reasonable and for good cause shown in open court."

On February 26, the court entered an agreed order continuing the trial because the prosecutor was in a different trial and Martin needed additional time to prepare. The court set a new trial date for April 9, 2015.

On April 9, Martin requested new counsel, claiming he had "no other choice" but to go pro se because Quigley was not adequately representing him. The court denied his request for new counsel but permitted Martin to have Quigley represent him. The court gave Quigley a few days to prepare for trial. On April 14, Martin requested additional time for his attorney to prepare. The court denied this request, and trial began on April 16, 2015.

The jury convicted Martin of second degree assault. By special verdict, the jury also found that the crime was an aggravated domestic violence offense.

At sentencing, the trial court analyzed the comparability of Martin's out-of-state convictions to Washington offenses and determined that some were comparable and others were not. The court did not sentence Martin as a persistent offender. The court calculated his offender score to be 6 and imposed

an exceptional sentence based on the domestic violence aggravator. The court sentenced him to a total of 79 months.

ANALYSIS

*Constitutional Speedy Trial Rights*

Martin claims a 15-month delay in bringing him to trial violated his constitutional right to a speedy trial. Typically, we review a decision to grant or deny a continuance for an abuse of discretion. But when a defendant claims a delay violated his constitutional speedy trial rights, we review the decision de novo.[2]

To determine whether a delay has violated a defendant's right to a speedy trial, courts apply the test set out in Barker v. Wingo.[3] To trigger the Barker analysis the defendant must show a presumptively prejudicial delay.[4] If a defendant meets this threshold test, the court then considers a number of factors to determine if the delay constitutes a constitutional violation: the length of the delay, the reason for the delay, whether and to what extent the defendant asserted his speedy trial rights, and whether the delay caused prejudice to the defendant.[5]

---

[2] State v. Iniguez, 167 Wn.2d 273, 280, 217 P.3d 768 (2009).
[3] 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).
[4] Barker, 407 U.S. at 530.
[5] Barker, 407 U.S. at 530-32.

Here, the 15-month delay is sufficient to trigger the Barker analysis, but each Barker factor weighs in favor of the State. The delay was not extraordinarily long and primarily benefited the defendant. And because Martin does not show how the delay prejudiced his defense, the "extreme remedy" of dismissal with prejudice is not warranted here.[6]

As a threshold matter, Martin must establish the delay was presumptively prejudicial.[7] In applying this threshold test, courts consider the length of delay, the complexity of the case, and if the defense relies on eyewitness testimony where eyewitnesses might become unavailable or their memories fade.[8] Washington courts have not adopted a bright line rule for when the delay is presumptively prejudicial.[9] But our Supreme Court has found that eight months was "just beyond the bare minimum needed to trigger the Barker inquiry."[10]

Martin calculates the delay as 15 months, the time between his request for disposition and the trial. The State suggests the proper calculation is the time between Martin's arraignment and the trial, which is approximately 11 months. Neither party cites authority supporting its calculation. Because each yields a

---

[6] Iniguez, 167 Wn.2d at 295.
[7] Iniguez, 167 Wn.2d at 283.
[8] Iniguez, 167 Wn.2d at 292 (citing Barker, 407 U.S. at 531 & n.31).
[9] Iniguez, 167 Wn.2d at 292.
[10] Iniguez, 167 Wn.2d at 293.

result longer than 8 months, the length of delay exceeds the bare minimum necessary to pass the threshold test.

Martin contends the delay was excessive because his charges were not complex.[11] The State responds that even if the charges were not complex, other aspects of the case were complex. Specifically, the State insists that the persistent offender allegation and Martin's multiple out-of-state convictions complicated the case. Despite the complications arising from Martin's criminal history, because the delay exceeds the eight-month bare minimum, Martin has met the threshold test. We therefore consider the Barker factors.

"'[T]he length of the delay is both the trigger for analysis and one of the factors to be considered.'"[12] In State v. Ollivier,[13] the Supreme Court listed a number of speedy trial challenges involving delays ranging from 21 months to 6 years where the delays were not "exceptionally long." The 15-month delay in this case is comparatively short. Although the length of delay is sufficient to trigger the Barker analysis, because the delay does not substantially exceed the "bare minimum" and Martin's prior convictions complicated the case, this factor weighs in favor of the State.

---

[11] See Iniguez, 167 Wn.2d at 292.
[12] State v. Ollivier, 178 Wn.2d 813, 828, 312 P.3d 1 (2013) (quoting United States v. Colombo, 852 F.2d 19, 24 (1st Cir. 1988)).
[13] 178 Wn.2d 813, 828-29, 312 P.3d 1 (2013).

The second factor is the reason for the delay and which party is more responsible for it.[14] "'[D]elay caused by the defense weighs against the defendant.'"[15] "Many courts hold that even where continuances are sought over the defendant's objection, delay caused by the defendant's counsel is charged against the defendant under the Barker balancing test if the continuances were sought in order to provide professional assistance in the defendant's interests."[16]

Here, preparation of the defense was the primary reason for the delay. As in Ollivier, where the defendant objected to most of the continuances, "[n]early all of the continuances . . . were sought to accommodate defense counsel's need to prepare for trial."[17] The only continuance requested solely by the prosecutor caused a delay of only one week. Martin attributes the February 26 continuance to the State because the prosecuting attorney was going to be in trial on another matter in a few weeks. But Martin's trial would have begun on February 26 had he not requested additional time to prepare. Thus, this delay is attributable to Martin. The second factor also weighs in favor of the State.

The third factor—whether and to what extent the defendant asserted his constitutional right to a speedy trial—involves examining the frequency and force

---

[14] Ollivier, 178 Wn.2d at 831; Iniguez, 167 Wn.2d at 294.
[15] Ollivier, 178 Wn.2d at 833 (alteration in original) (quoting Vermont v. Brillon, 556 U.S. 81, 90, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009)).
[16] Ollivier, 178 Wn.2d at 834.
[17] Ollivier, 178 Wn.2d at 834.

of the defendant's objections.[18] In <u>State v. Iniguez</u>,[19] this factor weighed against the State when the defendant "asserted his right at every continuance request. He objected, requested reduced bail, moved for a severance twice, and moved for a dismissal at least four times." Here, Martin objected to the continuances at first, refused to sign the continuance orders, and moved for dismissal under the IAD for failure to timely bring him to trial. But, as the trial date grew near, Martin repeatedly requested additional time. Because Martin was not consistent in asserting his speedy trial rights, this factor weighs in favor of the State.

The final <u>Barker</u> factor is particularized prejudice.[20] In <u>Ollivier</u>, the Supreme Court clarified that despite meeting the threshold showing of presumptively prejudicial delay, the court will not necessarily presume the defendant has been prejudiced.[21] "Presumed prejudice is recognized only in the case of extraordinary delay, except when the government's conduct is more egregious than mere negligence."[22] Here, the delay is not exceptionally long and there is no evidence of bad faith by the government, so Martin must present evidence of particularized prejudice.

---

[18] <u>Ollivier</u>, 178 Wn.2d at 837-38.
[19] 167 Wn.2d 273, 295, 217 P.3d 768 (2009).
[20] <u>Doggett v. United States</u>, 505 U.S. 647, 654, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).
[21] <u>See</u> <u>Ollivier</u>, 178 Wn.2d at 840.
[22] <u>Ollivier</u>, 178 Wn.2d at 842.

Three types of particularized prejudice may arise from delay: oppressive pretrial incarceration, anxiety and concern of the accused, and impairment to the defense.[23] Martin contends that he was likely prejudiced by the delay because of impairment to his defense. Prejudice by impairment to the defense, the most important of the three interests, relates to the possibility that evidence will be lost.[24] Delay can cause difficulty in finding witnesses and decay in the witnesses' memories.[25] But we must weigh any impairment to the defense against the benefit to the defendant as a result of the continuances.[26]

Martin claims that the delay impaired his defense because he was unable to locate certain witnesses that could confirm an alibi. But these witnesses were unavailable on the original trial date, so they would not have been available to support his defense. In fact, even though his search was ultimately unsuccessful, the continuances provided Martin with more time to look for them. In addition, Martin's defense benefited from the delay because defense counsel had time to tackle Martin's complex criminal history. Thus, Martin does not show particularized prejudice, and this final factor weighs in favor of the State.

---

[23] Ollivier, 178 Wn.2d at 840 (quoting Doggett, 505 U.S. at 654).
[24] Barker, 407 U.S. at 532.
[25] Barker, 407 U.S. at 532.
[26] Ollivier, 178 Wn.2d at 845.

Because all four Barker factors weigh in favor of the State, the delay did

not constitute a speedy trial violation.[27]

*Interstate Agreement on Detainers*

Martin also claims that the delay violated the IAD, requiring dismissal.

Under the IAD, when Washington has charges pending against a prisoner

incarcerated in another jurisdiction, it may place a "hold" on him.[28] The prisoner

may then demand disposition of his Washington charges.[29] Once the State

receives a disposition request, it has 180 days to bring the defendant to trial.[30]

However, the IAD permits the court to grant "any necessary or reasonable

continuance" for "good cause shown in open court."[31] An appellate court will not

disturb a trial court's decision to grant or deny a continuance absent a showing of

manifest abuse of discretion.[32]

Here, the State agrees that the time between Martin's disposition request

and trial exceeded 180 days. But the State contends that the continuances were

reasonable and necessary and for good cause shown in open court. We agree.

---

[27] Iniguez, 167 Wn.2d at 295.
[28] RCW 9.100.010 art. III(a); State v. Welker, 157 Wn.2d 557, 563, 141 P.3d 8 (2006).
[29] RCW 9.100.010 art. III(a).
[30] RCW 9.100.010 art. III(a).
[31] RCW 9.100.010 art. III(a).
[32] State v. Woods, 143 Wn.2d 561, 579, 23 P.3d 1046 (2001).

The trial court granted most of the continuances at the request of Martin or his counsel. Martin cannot now assert that they were not for good cause or that they were not necessary or reasonable.[33] The only continuance requested solely by the prosecutor was to supplement the record supporting the pro se order. That continuance delayed proceedings for only a week, and the court found the State had shown good cause. Because fewer than 180 days passed between Martin's request for disposition and the first request for continuance and each continuance was requested by the defense or granted for good cause, no violation of the IAD occurred.[34]

*Ineffective Assistance of Counsel*

Claims of ineffective assistance present mixed questions of law and fact, which this court reviews de novo.[35] Martin claims the trial court should have considered whether a conflict existed between Martin and his trial counsel, Quigley. A defendant's constitutional right to effective assistance of counsel includes representation free from conflicts of interest.[36] A conflict deprives a defendant of effective assistance of counsel when an actual conflict exists and that conflict adversely affects the performance of defendant's attorney.[37] "An

---

[33] See State v. Johnson, 79 Wn.2d 173, 177, 483 P.2d 1261 (1971).
[34] See State v. Carpenter, 24 Wn. App. 41, 47, 599 P.2d 1 (1979).
[35] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).
[36] State v. White, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).
[37] White, 80 Wn. App. at 411.

actual conflict of interest exists when a defense attorney owes duties to a party whose interests are adverse to those of the defendant."[38]

Martin provides no factual support for his contention that a conflict existed. And nothing in the record shows that Martin's counsel owed a duty to anyone with interests adverse to Martin. Thus, a conflict of interest does not provide the basis for Martin's ineffective assistance of counsel claim. Rather, Martin appears to base his ineffective assistance claim on Quigley acting against his wishes when requesting continuances.[39] As the court observed in Ollivier, "[i]f because of the objections the trial court had denied counsel's requests for continuances that were needed to prepare for trial, then Ollivier might have had a strong claim that the right to effective assistance of counsel had been denied."[40] That concern is relevant here too. If the trial court had not granted the continuances, Martin could have claimed he had been denied effective assistance of counsel because Quigley had not adequately prepared for trial. The record shows that Quigley requested the continuances to best advance Martin's defense and did so by defeating the persistent offender allegation. Martin fails to show ineffective assistance of counsel.

---

[38] White, 80 Wn. App. at 411-12 (citing State v. Byrd, 30 Wn. App. 794, 798, 638 P.2d 601 (1981)).

[39] Martin claims that "counsel showed indifference to Martin's demand to protect his rights and abused their authority and discretion by delaying jury trial."

[40] Ollivier, 178 Wn.2d at 839.

*Offender Score Calculation*

Martin challenges the trial court's inclusion of a 1983 California burglary conviction in his offender score calculation. We review calculation of the offender score de novo. We review any factual determinations to decide comparability de novo to see if admitted facts, stipulated facts, or those found beyond a reasonable doubt in the foreign conviction support them.[41]

The sentencing court may include an out-of-state conviction in a defendant's offender score only if it has a comparable Washington crime.[42] "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law."[43] If the Washington and foreign statutes are not legally comparable, the trial court can consider the defendant's conduct under the Washington statute to see if the offenses are factually comparable. "The key inquiry is whether, under the Washington statute, the defendant could have been convicted if the same acts were committed in Washington."[44] The court must rely on facts admitted to, stipulated to, or found by a trier of fact beyond a reasonable doubt.[45]

---

[41] State v. Olsen, 180 Wn.2d 468, 473-74, 325 P.3d 187, cert. denied, 135 S. Ct. 287 (2014).

[42] State v. Weiand, 66 Wn. App. 29, 31, 831 P.2d 749 (1992).

[43] RCW 9.94A.525(3).

[44] State v. Thomas, 135 Wn. App. 474, 485, 144 P.3d 1178 (2006).

[45] In re Pers. Restraint of Lavery, 154 Wn.2d 249, 258, 111 P.3d 837 (2005); Ortega, 120 Wn. App. at 174.

The State has the burden of proving the offenses are comparable.[46] The State concedes that because the California statute is broader than the Washington statute, the statutes are not legally comparable.[47] Thus, at issue is whether they are factually comparable. The dispute centers on whether the trial court could properly conclude that Martin had entered a "building" as defined by Washington law.

Martin contends that the trial court did not have adequate proof that the California conviction was based on entry into a "building" as required by the Washington burglary statute. The California statute permits conviction for burglary for entry into a number of structures.

> Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, . . . railroad car, . . . trailer coach, . . . house car, . . . vehicle . . . when the doors are locked, aircraft . . . , or mine . . . , with intent to commit grand or petit larceny or any felony is guilty of burglary.[48]

By contrast, the Washington statute requires entry into "a building other than a vehicle."[49] Under Washington law, "'[b]uilding,' in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo

---

[46] Thomas, 135 Wn. App. at 483.

[47] See also Thomas, 135 Wn. App. at 483 (acknowledging that the California and Washington burglary statutes were not legally comparable because "unlawful" entry was not an element of the California burglary statute).

[48] CAL. PENAL CODE § 459.

[49] RCW 9A.52.030.

container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods."[50]

The criminal complaint to which Martin pleaded guilty in California stated that he "did willfully and unlawfully enter 800 Admiral Callaghan Lane, Vallejo, California, with the intent to commit a theft." Martin asserts that this conviction could have been based on entry into something other than a building, like a tent, vessel, or railroad car. But these structures fall under the Washington burglary statute's definition of "building."

Although the record does not show exactly what Martin entered at 800 Admiral Callaghan Lane, Martin has not shown that he could have been convicted in California by entering something that would not satisfy Washington's definition of "building." Thus, the offenses are factually comparable. We affirm Martin's sentence.

### Appellate Costs

Martin asks this court to waive his appellate costs. This court has broad discretion to grant or deny appellate costs.[51] RAP 14.2 permits the court to exercise that discretion in a decision terminating review. In exercising that discretion, ability to pay, although not the only relevant factor, is an important

---

[50] RCW 9A.04.110(5).

[51] RCW 10.73.160(1); State v. Sinclair, 192 Wn. App. 380, 388, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).

consideration.[52] "The appellate court will give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent."[53]

In this case, the trial court imposed 79 months to be served consecutively to any remaining time on his 3- to 5-year Wyoming sentence. Because at the termination of his incarceration Martin will have spent substantial time in prison, he will likely have difficulty paying the costs of this appeal. The State offers no argument or evidence to the contrary. Therefore, we give Martin the continued benefit of the trial court's order of indigency and deny the State costs of appeal.

## CONCLUSION

Because the delay in Martin's trial was not exceptionally long, with much of it attributable to the defendant, Martin's speedy trial challenge fails. Because the continuances were attributable to Martin or granted for good cause shown in open court, his IAD challenge also fails. Finally, Martin's ineffective assistance challenge fails because he does not provide evidence of a conflict of interest.

Because the California burglary offense was factually comparable to the Washington burglary offense, the trial court properly considered Martin's out-of-state conviction in calculating his offender score.

---

[52] Sinclair, 192 Wn. App. at 389.
[53] RAP 15.2(f).

We affirm Martin's conviction and sentence.

_Leach, J_

WE CONCUR:

_Mann, J._                    _Trickey, ACJ_