2014 SEP 29 AM 9: 20


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70641-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LASHAWN D. HOOPER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 29, 2014 |
| | ) | |

VERELLEN, A.C.J. — In this prosecution for burglary, the trial court denied LaShawn Hooper's requests for a lesser included offense instruction and credit for time he spent in inpatient treatment prior to trial. Because Hooper fails to demonstrate any error in these decisions, and because his challenge to the sufficiency of the instructions lacks merit, we affirm.

## FACTS

Based on allegations that Hooper burglarized a home and assaulted the owner, the State charged him with first degree burglary.

Following a period of competency restoration at Western State Hospital, Hooper requested release on personal recognizance for the purpose of getting "some sort of treatment." Defense counsel told the court about "the IMPACT program which is designed to provide housing for long term treatment."[1] Counsel said that IMPACT

---

[1] Report of Proceedings (RP) (Mar. 29, 2012) at 41.

provided inpatient treatment and classes. Over the State's objection, the court granted "the request to PR [Hooper] on the condition that he participate in this program."[2]

At trial, Michael Schutz testified that he returned to his home one afternoon to find his house in disarray and Hooper rifling through his closet. Schutz did not know Hooper and had not given him permission to be in his home. Schutz grabbed Hooper and attempted to call 911. Hooper struck and bit Schutz and stabbed him with a key. Schutz let go of Hooper and reached for his phone. Hooper then grabbed Schutz and slammed his knee into Schutz's head. Hooper eventually fled the house with a backpack.

Schutz called 911 and police responded within minutes. Schutz was bleeding from a bite mark under his left arm and an injury to his lip. He also had a large bite mark on his forehead. Officers found a stool outside the house beneath an open bathroom window. They also found fresh dirt inside the house underneath the same window.

An officer located Hooper jumping a nearby fence. After chasing Hooper down, the officer convinced him to surrender by threatening to taser him. Hooper was sweating, out of breath, and bleeding from his head and hands. Schutz later identified Hooper as the man he found in his house. Items from Schutz's house were found in the backpack Hooper was carrying at the time of his arrest.

Hooper testified that he had not entered Schutz's house and merely trespassed across his yard. He admitted fighting with Schutz and inflicting the injuries observed by

---

[2] Id. at 42.

2

officers but claimed Schutz had grabbed him, accused him of breaking into the house, and put him in a headlock.

The defense requested lesser-included offense instructions for fourth degree assault and second degree criminal trespass. The court gave a fourth degree assault instruction but refused to give a trespass instruction because it was not legally a lesser included offense of first degree burglary. The jury found Hooper guilty of first degree burglary.

At sentencing, defense counsel and the prosecutor agreed that Hooper was ineligible for credit for time he spent prior to trial in the inpatient treatment program. Defense counsel, however, requested that the court credit the time as part of an exceptional sentence below the standard range. The trial court declined to impose an exceptional sentence, granted credit for time served, and stated, "I don't have authority under the statute to give you credit for anything else."[3]

Hooper appeals.

## DECISION

Hooper first contends the court erred in refusing "to instruct the jury on the lesser included offense of criminal trespass in the second degree."[4] The court did not err.

A defendant is entitled to a lesser-included offense instruction if (1) each element of the lesser offense is a necessary element of the crime charged, and (2) the evidence in the case supports an inference that only the lesser offense was committed.[5] We

---

[3] RP (July 10, 2013) at 159.

[4] Appellant's Br. at 5.

[5] State v. Fernandez-Medina, 141 Wn.2d 448, 454-55, 6 P.3d 1150 (2000) (quoting State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).

review a trial court's conclusion regarding the first factor—known as the "legal prong"—de novo.[6] We review a decision on the second factor, or factual prong, for abuse of discretion.[7] Only the legal prong is at issue here.

The legal prong is not satisfied if it is possible to commit the greater offense without having committed the lesser offense.[8] A person commits first degree burglary "if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person."[9] A person commits second degree criminal trespass when "he or she knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree."[10] Criminal trespass in the first degree occurs when a person "knowingly enters or remains unlawfully in a building."[11]

First degree burglary can be committed without committing second degree criminal trespass. A person who knowingly enters or remains unlawfully in a building while armed with a deadly weapon commits first degree burglary and *first* degree criminal trespass, but does not commit *second* degree criminal trespass because the

---

[6] State v. LaPlant, 157 Wn. App. 685, 687, 239 P.3d 366 (2010).

[7] Id.

[8] State v. Turner, 143 Wn.2d 715, 729, 23 P.3d 499 (2001) (quoting State v. Roybal, 82 Wn.2d 577, 583, 512 P.2d 718 (1973)).

[9] RCW 9A.52.020.

[10] RCW 9A.52.080.

[11] RCW 9A.52.070.

latter can be committed only under circumstances not amounting to first degree criminal trespass.[12] In reaching that conclusion, the Mounsey court stated:

> Since buildings and dwellings are equivalent under RCW 9A.04.110, first degree criminal trespass is a lesser included offense of first degree burglary. *But second degree criminal trespass is not, since second degree criminal trespass involves knowingly entering or remaining on premises in a situation which does not amount to first degree criminal trespass.* Second degree criminal trespass then can apply only in situations where a person enters or remains unlawfully on premises other than a building, i.e., open grounds, yards, etc. If a person knowingly enters or remains unlawfully in a building, he is guilty of first degree criminal trespass, which by definition cannot be second degree criminal trespass. Therefore, . . . Mounsey was not entitled to an instruction on second degree criminal trespass.[13]

Hooper does not argue that Mounsey was wrongly decided. And while he correctly points out that Mounsey involved different facts, Mounsey's holding, quoted above, applies equally to this case. Under Mounsey, Hooper's argument fails the legal prong of the lesser-included test. The court did not err in refusing to give the requested instruction.

Hooper next contends the court's instruction defining "premises" created confusion regarding the difference between a building and premises. The court instructed the jury that first degree burglary occurs when a person unlawfully enters or remains in "a building."[14] Similarly, the to-convict instruction required the jury to find that Hooper "entered or remained unlawfully *in a building.*"[15] Other instructions stated that unlawful entry or remaining "upon premises" occurs if the person is not licensed, invited

[12] State v. Mounsey, 31 Wn. App. 511, 517-18, 643 P.2d 892 (1982).

[13] Id. at 518 (emphasis added).

[14] Clerk's Papers at 57.

[15] Id. at 62 (emphasis added).

or privileged to enter or remain, and that "premises includes any building, dwelling, or any real property."[16] Hooper contends these instructions allowed the jury to conclude "that legally speaking, premises and building, dwelling or property were essentially the same."[17] We disagree.

"'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'"[18] The instructions in this case unambiguously required the jury to find that Hooper unlawfully entered or remained *in a building*. While they also stated that a "building" is a form of "premises," nothing in the instructions suggested that mere property or premises could be a "building." The instructions did not confuse these terms and accurately informed the jury of the applicable law.

Last, Hooper contends the sentencing court erred in denying him credit for presentence time he spent in inpatient treatment in the IMPACT program. Whether to award credit for time served is a question of law subject to de novo review.[19] The court did not err in denying the requested credit.

Under RCW 9.94A.505(6), a trial court is required to grant credit for all confinement time served prior to sentencing. "Confinement" is defined as "total or partial confinement."[20] "Total confinement" means "confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or

---

[16] Id. at 59-60.

[17] Appellant's Br. at 14.

[18] State v. Knutz, 161 Wn. App. 395, 403, 253 P.3d 437 (2011) (quoting State v. Aguirre, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010)).

[19] State v. Swiger, 159 Wn.2d 224, 227, 149 P.3d 372 (2006).

[20] RCW 9.94A.030(8).

any other unit of government for twenty-four hours a day."[21] "Partial confinement" is

defined as

> confinement for no more than one year *in a facility or institution operated or utilized under contract by the state or any other unit of government,* or, *if home detention or work crew has been ordered by the court* or home detention has been ordered by the department as part of the parenting program, *in an approved residence,* for a substantial portion of each day with the balance of the day spent in the community. Partial confinement includes work release, home detention, work crew, and a combination of work crew and home detention.[22]

The State points out, and Hooper does not dispute, that nothing in the record

shows that the IMPACT program is "a facility or institution operated or utilized under

contract by the state or any other unit of government." Nor does Hooper contend that

IMPACT is a form of home detention or work crew. Instead, Hooper contends that

IMPACT "is akin" to the forms of partial confinement mentioned in the last sentence of

the statute. That sentence, however, merely reiterates the approved forms of

residential partial confinement previously mentioned in the statute. Hooper presents no

compelling authority, argument, or statutory interpretation supporting his claim that the

statute authorizes credit for other programs such as inpatient treatment. Nor does he

address contrary authority cited by the State.[23] Instead, he relies on State v. Medina.[24]

Medina, however, is distinguishable.

---

[21] RCW 9.94A.030(51).

[22] RCW 9.94A.030(35) (emphasis added).

[23] See State v. Hale, 94 Wn. App. 46, 55, 971 P.2d 88 (1999) (after reviewing the statutory definition of partial confinement, appellate court reversed credit for inpatient treatment, stating that "the SRA does not grant trial courts authority to credit drug treatment against confinement time or community service").

[24] 180 Wn.2d 282, 324 P.3d 682 (2014).

In <u>Medina</u>, the defendant sought credit for time he spent in the King County Community Center for Alternative Programs (CCAP) prior to his second trial. In concluding that CCAP did not constitute partial confinement, the <u>Medina</u> court noted that the statute defining partial confinement equates "confinement" with "residence", and that "the CCAP facility is not a residence."[25] Seizing on this portion of <u>Medina</u>, Hooper argues that he is entitled to credit for his time in IMPACT because his treatment was residential. But as discussed above, Hooper fails to demonstrate that credit is statutorily authorized for this type of residential program. By contrast, the CCAP program at issue in <u>Medina</u>, although not residential, did otherwise qualify for credit under RCW 9.94A.030(35) because the record established that CCAP was "a facility or institution operated or utilized under contract by the state or any other unit of government."[26]

Hooper's cursory claims that denying him credit violates equal protection, double jeopardy, and due process are too conclusory to merit discussion.[27]

Affirmed.

WE CONCUR:

_____

Cox, J.

_____

_____

Becker, J.

---

[25] <u>Medina</u>, 180 Wn.2d at 289.

[26] <u>See id.</u> at 284-87 .

[27] <u>State v. Elliott</u>, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (appellate court need not consider claims that are insufficiently argued).