## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46711-9-II |
| Respondent, | |
| v. | |
| ROBERT EUGENE ACKERSON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Robert E. Ackerson appeals from his conviction for possession of methamphetamine. He argues that the trial court erred by not giving him credit for time served in a drug court program and that the error denied him equal protection and violated double jeopardy. He also argues the trial court erred in imposing legal financial obligations (LFOs). We affirm.

### FACTS

On June 10, 2013, the State charged Ackerson with possession of a controlled substance, methamphetamine.[1] Ackerson was on community custody at the time of the charged offense. On July 29, 2013, Ackerson signed a contract to participate in a drug court program. Ackerson's pending charges would have been dismissed upon successful completion of the program. The court ordered Ackerson to immediately report to Klallam Counseling in Port Angeles upon his release from custody.

---

[1] RCW 69.50.4013.

Because of his repeated violations of the drug court contract, the drug court terminated Ackerson's participation in drug court on September 18, 2014. Pursuant to the contract, Ackerson proceeded to a stipulated facts bench trial. The trial court found Ackerson guilty of possession of methamphetamine.

During his sentencing hearing, Ackerson argued that his LFOs should be waived because he would never be able to pay them. Of the fees in question, the discretionary fees included expenses specially incurred by the State in prosecuting Ackerson: the court appointed attorney fee, court costs including a criminal filing fee, a statutory assessment of the Olympic Peninsula Narcotics Enforcement Team fee, and fines/costs for the drug court program. The mandatory fees included the victim assessment fee and the DNA collection fee.[2]

In an effort to decrease Ackerson's LFOs, the trial court waived some of the requested fees including the appointed attorney fee, the DNA collection fee, and the criminal filing fee.[3] However, the trial court found that even though Ackerson was indigent, he received some disability money and would be able to pay a very minimal amount. The trial court ordered that all payments of the LFOs would commence 60 days after Ackerson was released and that he would pay $25 per month.

---

[2] Generally, trial courts have discretion to waive fines. *See* RCW 9.94A.550.

[3] The trial court failed to mark the waiver of the filing fee on the judgment and sentence, and therefore, the judgment and sentence does not appear to reflect the trial court's pronouncement because it did not show an explicit waiver of the filing fee.

In addition, the trial court found that Ackerson would be able to work enough to make money to pay the bare minimum amount of $25, which equaled the amount Ackerson had been ordered to pay for LFOs on prior judgments and sentences. The trial court also ordered that Ackerson could satisfy the LFOs by potentially performing community service work.

The trial court sentenced Ackerson to 15 months' confinement, which included credit for time already served, and 12 months of community custody. However, Ackerson and the State disagreed over what constituted "time served" for the credit. Ackerson requested that the court credit him for his time served in inpatient treatment.[4] The State argued against it because the trial court did not sentence Ackerson to treatment. The trial court determined that only Ackerson's time spent in jail counted, not the time he spent in inpatient treatment.

On October 10, 2014, the trial court heard Ackerson's motion to stay his LFOs pending his appeal. The trial court granted the motion and filed an order to stay the LFO and community custody fees pending appeal.[5] Ackerson appeals.

## ANALYSIS

I.    CREDIT FOR TIME SERVED

Ackerson argues that the trial court erred in denying his request for credit for time served while he was in drug court residential treatment. He argues that the trial court's decision to deny his request was a violation of his equal protection rights and his right against double jeopardy. We disagree.

---

[4] The record does not include any facts demonstrating the character of the inpatient treatment program. The record is silent as to whether the facility confined Ackerson and if it did, for how long. It is also silent as to whether the facility had a contract with the State.

[5] Pursuant to RCW 9.95.062.

A.      Standard of Review

The resolution of what constitutes credit for time served involves statutory interpretation. However, this case involves the interpretation of statutory provisions and the application of constitutional principles. We review both questions de novo. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131; *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010).

When interpreting a statute, we look first to the statute's plain language, and if the meaning is plain on its face, the inquiry is completed. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

A defendant is constitutionally entitled to credit for time served prior to sentencing. *See In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 594-95, 647 P.2d 1026 (1982). RCW 9.94A.505(6) requires trial courts to grant credit for all pre-sentence confinement time Ackerson served. This statute "'simply represents the codification of the constitutional requirement that an offender is entitled to credit for time served prior to sentencing.'" *In re Pers. Restraint of Costello*, 131 Wn. App. 828, 833, 129 P.3d 827 (2006) (quoting *State v. Williams*, 59 Wn. App. 379, 382, 796 P.2d 1301 (1990)).

The Sentencing Reform Act of 1981 (SRA) defines confinement as either partial confinement or total confinement;[6] however, neither definition clearly applies to pre-sentence time served in an inpatient treatment facility. "'Total confinement' means confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day." RCW 9.94A.030(52). In part, the term "[p]artial confinement" means

---

[6] RCW 9.94A.030(8), (36), (52). RCW 9.94A.030 was amended in 2015. None of the amendments is relevant to this opinion or affect our analysis.

> confinement for no more than one year in a facility or institution operated or utilized under contract by the state or any other unit of government, or, if home detention, electronic monitoring, or work crew has been ordered by the court or home detention has been ordered by the department as part of the parenting program, in an approved residence, for a substantial portion of each day with the balance of the day spent in the community. Partial confinement includes work release, home detention, work crew, electronic monitoring, and a combination of work crew, electronic monitoring, and home detention.

RCW 9.94A.030(36).

Ackerson argues that his time in the inpatient treatment facility was total confinement in a facility under contract with the State. Ackerson's argument fails because he failed to show that the drug court program confined him inside the physical boundaries of a facility for 24 hours a day. He has also failed to show that the inpatient program was operated by or utilized under contract by any governmental entity. Ackerson's time in the residential program did not qualify as partial confinement either. Treatment facilities are not specifically included in the definition of either "total confinement" or "partial confinement." *See* RCW 9.94A.030(36), (52).

In addition, we determined in *State v. Hale*, 94 Wn. App. 46, 55, 971 P.2d 88 (1999), that "the SRA does not grant trial courts authority to credit drug treatment against confinement time or community service." Ackerson attempts to distinguish his case from *Hale*, arguing the ruling does not apply because the inpatient treatment in *Hale* was served after sentencing, not prior to sentencing. This distinction is without merit.

Ackerson does not argue that the program qualified as partial confinement, but he cites *State v. Medina*, 180 Wn.2d 282, 324 P.3d 682 (2014). In *Medina*, the defendant was ordered to participate in "CCAP Enhanced" and "CCAP Basic" for approximately five years while awaiting

5

retrial on charges of second degree murder.[7]  180 Wn.2d at 284.  Medina argued that he was entitled to credit for time served in the alternative programs because it was partial confinement.  180 Wn.2d at 284, 286.  Our Supreme Court rejected this argument: "we do not think that participation in the educational, counseling, and service-oriented programs entailed in CCAP meets the statutory definition of 'confinement.'  Participation in these programs is similar to reporting for work or school—clearly, the CCAP facility is not a residence."  *Medina*, 180 Wn.2d at 289.  The treatment program for drug court is much more similar to CCAP than that of work release or other programs contained in the definition of partial confinement in that reporting for treatment and check-ins with the drug court is similar to reporting for work or school.

Ackerson refers to the treatment through drug court as "residential treatment" in his brief, yet he did not provide information in the record to support this contention; we are without information to analyze his argument.  Therefore, the court did not err by denying Ackerson credit for time he spent in an inpatient treatment program.

B.      Equal Protection

Ackerson argues that the equal protection clauses of the U.S. Constitution and the Washington Constitution require that he receive credit for all of his time spent in inpatient treatment.  He argues that there is "no rational basis for distinguishing" between credit for time

---

[7] CCAP is a "King County Community Center for Alternative Programs".  It is

> "a weekly itinerary . . . of structured programs" administered at the Yesler Building in downtown Seattle.  There are two different CCAP tracks: CCAP Enhanced and CCAP Basic.  Offenders ordered into CCAP Enhanced report in person to the Yesler Building daily, while those ordered into CCAP Basic report only by phone.

*Medina*, 180 Wn.2d at 285 (footnotes omitted).

served in "'the Olympic program' and any other 24 hour confinement." [8]  Br. of Appellant at 9. Ackerson has failed to provide facts to support this contention.  Assuming the veracity of the statement, we disagree.

Under the state and federal constitutions, persons similarly situated with respect to the legitimate purposes of the law are guaranteed equal treatment.  U.S. CONST. amend. XIV; WASH. CONST. art. I, § 12; *State v. Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996).  "Equal protection is denied if a valid law is administered in a way that unjustly discriminates between similarly situated persons.  Before [we] will scrutinize an equal protection claim, the defendant must establish that he is situated similarly to others in a class."  *Harris v. Charles*, 151 Wn. App. 929, 936, 214 P.3d 962 (2009) (citations omitted).

Equal protection challenges are analyzed under one of three standards of review: strict scrutiny, intermediate scrutiny, or rational basis.  *Manussier*, 129 Wn.2d at 672-73.  We review the legislative classification for a rational basis when the classification does not involve a suspect class or threaten a fundamental right.  *Manussier*, 129 Wn.2d at 673.  When a statute involves a physical liberty interest alone and does not involve a suspect class, no fundamental right is threatened.  *Manussier*, 129 Wn.2d at 673. Thus, we review Ackerson's challenge under the rational basis test.

Under the rational basis test, the challenged law must serve a legitimate state objective, the law must not be wholly irrelevant for achieving that objective, and the means must be rationally related to the objective.  *Manussier*, 129 Wn.2d at 673.  The legislature need not adopt the best means; rather, the legislature has broad discretion in how it pursues its legitimate goals. *Manussier*,

---

[8] Ackerson's brief refers to the "Olympic program" although that does not seem to be the program in which he was participating.  We assume it is an error.

129 Wn.2d at 673. The person challenging the law must establish that the classification is purely arbitrary. *Manussier*, 129 Wn.2d at 673. Ackerson failed to do so.

Ackerson voluntarily entered a therapeutic drug court program which has special rules. Normally, a trial court cannot order a defendant into treatment before sentencing. *See Butler v. Kato*, 137 Wn. App. 515, 521-22, 154 P.3d 259 (2007). In this case, Ackerson, pre-trial, contracted to follow the drug court rules which included treatment. In exchange for compliance, charges against Ackerson would have been dismissed.

Because we determined that the inpatient program Ackerson attended is not confinement, his argument fails. Ackerson also argues that "there is no rational basis for distinguishing between pre-trial and post-trial detention." Br. of Appellant at 9. The issue here, however, is not between those categories. It is between people who voluntarily enter treatment and those who are involuntarily ordered into confinement by the court. Ackerson's equal protection rights were not violated by the trial court's denial to grant the credit.

C.      Double Jeopardy

Ackerson argues that his time spent in an inpatient treatment program violated double jeopardy because it was confinement. Because we have determined that Ackerson's time spent in an inpatient program was not confinement, his argument fails.

II.      LEGAL FINANCIAL OBLIGATIONS[9]

Ackerson argues that his LFOs should be vacated because the trial court violated his due process and equal protection rights by ordering LFOs despite his inability to pay them and his risk

---

[9] Ackerson does not distinguish between mandatory and discretionary LFOs. Our Supreme Court has held that mandatory LFOs are not evaluated based on a defendant's ability to pay. *State v. Curry*, 118 Wn.2d 911, 917, 829 P.2d 166 (1992). "[T]he legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing these obligations." *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

of incarceration as a penalty. The State argues that there are no equal protection or due process violations because the Department of Corrections (DOC) has hearings that provide sufficient safeguards to protect against the incarceration of indigents.

A.      Standard of Review

We review constitutional questions de novo. *State v. Cubias*, 155 Wn.2d 549, 552, 120 P.3d 929 (2005). The trial court's determination "as to the defendant's resources and ability to pay [an LFO] is essentially factual and should be reviewed under the clearly erroneous standard." *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991).

B.      Ripeness

The State argues that Ackerson's claim is not ripe for review because the State has not yet attempted to enforce payment.

The State made the same argument in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), but the Washington Supreme Court rejected it. "'Three requirements compose a claim fit for judicial determination: if the issues are primarily legal, do not require further factual development, and the challenged action is final.'" *Blazina*, 182 Wn.2d at 832 n.1 (quoting *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008) (internal quotations omitted)). The court in *Baldwin* noted:

> The defendant may petition the court at any time for remission or modification of the payments on [the basis of manifest hardship]. Through this procedure the defendant is entitled to judicial scrutiny of his obligation and his *present* ability to pay at the relevant time.

63 Wn. App. at 310-11 (footnote omitted).

The fact that the State may not yet be attempting to collect Ackerson's LFOs does not preclude our review of this issue. *State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015).

Ackerson objected to the trial court's finding he had the ability to pay his LFOs. We therefore address the issue.

C.     The Trial Court's Imposition of LFOs Was Not Clearly Erroneous

Here, the trial court's assessment of Ackerson's ability to pay was not clearly erroneous. The law

> does not require formal findings of fact about a defendant's present or future ability to pay LFOs, the record must be sufficient for us to review whether "the trial court judge took into account the financial resources of the defendant and the nature of the burden" imposed by LFOs under the clearly erroneous standard.

*State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011) (footnotes omitted) (*Baldwin*, 63 Wn. App. at 312). The record shows that the trial court took Ackerson's financial resources into account as well as the burden of imposing LFOs on him. The trial court considered Ackerson's disability and the nature of the work he might seek and his other LFO obligations for prior crimes. The trial court even attempted to create a scheme for Ackerson to complete community service to assist in his payment of the LFOs.

D.     DOC Hearings and Due Process

Ackerson argues that DOC's hearing process does not contain sufficient safeguards to prevent his later imprisonment based on his inability to pay the LFOs, and it therefore, violates his rights to equal protection and his right to due process. We disagree.

The United States Supreme Court previously held that it is fundamentally unfair to imprison indigent defendants solely because of their inability to pay court-ordered fines. *Bearden v. Georgia*, 461 U.S. 660, 667-68, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983); *Williams v. Illinois*, 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). "Moreover, [article 1, section 17 of the Washington Constitution], prohibiting imprisonment for debt, would likely preclude imprisonment solely for inability to pay." *State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166, (1992).

RCW 10.01.160(3) provides that a trial court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them." The statute further states that "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3). In *Curry*, the court observed that, while not required to make findings, "[t]he court is directed to *consider* ability to pay." 118 Wn.2d at 916. Here, the trial court did consider Ackerson's ability to pay the LFOs and talked to him about his financial situation. The trial court waived a number of the LFOs that were requested and concluded that although Ackerson may not have full-time regular employment, he would be able to earn enough money to pay the court ordered monthly payment.

A defendant who is not in contumacious default may petition the sentencing court for remission of the payment of all or part of his costs. RCW 10.01.160(4); *State v. Duncan*, 180 Wn. App. 245, 250, 327 P.3d 699 (2014), *review granted*, 183 Wn.2d 1013 (2015). Due process precludes the jailing of an offender for failure to pay a fine if the offender's failure to pay was due to his or her indigence. *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 111, 52 P.3d 485 (2002).

"However, if an offender is capable of paying but willfully refuses to pay, or if an offender does not 'make sufficient bona fide efforts to seek employment or borrow money in order to pay,' the State may imprison the offender for failing to pay his or her LFO." *State v. Nason*, 168 Wn.2d 936, 945, 233 P.3d 848 (2010) (quoting *Bearden*, 461 U.S. at 668). While the burden is on the offender to show that his nonpayment is not willful, "due process still imposes a duty on the court to inquire into the offender's ability to pay . . . at 'the point of collection and when sanctions are sought for nonpayment.'" *Nason*, 168 Wn.2d at 945 (quoting *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997)); RCW 9.94B.040(3)(b). In preventing incarceration for inability to pay,

the "inquiry [into the offender's ability to pay] must be at the 'the point of collection and when sanctions are sought for nonpayment.'" *Nason*, 168 Wn.2d at 948 (quoting *Blank*, 131 Wn.2d at 242).

The court in *State v. Ziegenfuss*, 118 Wn. App. 110, 74 P.3d 1205 (2003), addressed a similar issue. Ziegenfuss argued that the "DOC's procedures are constitutionally inadequate, because in cases where the alleged violation is failure to pay legal financial obligations, a hearing officer may invoke sanctions, including total confinement, without considering her ability to pay ('upon any finding that a defendant failed to pay')." *Ziegenfuss*, 118 Wn. App. at 114. The court said

> there is no language in the regulations requiring imposition of sanctions without regard to ability to pay, . . . imposition of sanctions without an inquiry into ability to pay would violate due process and article I, section 17 of the Washington Constitution. Incarceration cannot occur unless the State proves that failure to pay is willful—that the accused has the means to pay and has intentionally failed to do so. The regulation permits a hearing officer to "receive relevant evidence including hearsay evidence" and to "[q]uestion witnesses called by the parties in an impartial manner to elicit any facts deemed necessary to fairly and adequately decide the matter," and permits the offender to rebut the State's evidence. This is consistent with due process.

*Ziegenfuss*, 118 Wn. App. at 114 (footnotes omitted).

Sufficient safeguards exist to prevent the imprisonment of indigent defendants based on their indigence. No defendant should be incarcerated because of his or her inability to pay court ordered LFOs unless the violation is willful. Ackerson's argument fails.

E.    DOC Hearings and Equal Protection

Ackerson also argues that the "disparate approaches toward people supervised by the court and those supervised by DOC violates" his right to equal protection by treating him differently than similarly-situated offenders. Br. of Appellant at 14. He argues that a person supervised by

12

the court is given an opportunity to demonstrate why he should not be imprisoned for failure to pay.

We are unsure as to whom Ackerson is referring as "court supervisees." We note that people supervised by the court are subject to the same laws for failure to pay LFOs as those supervised by the DOC.[10]

Rational basis review again applies because this case involves a physical liberty interest and does not involve a suspect class. *Manussier*, 129 Wn.2d at 673. No fundamental right is implicated. *Manussier*, 129 Wn.2d at 673. The challenged law must only serve a legitimate state objective, it must not be wholly irrelevant for achieving that objective, and the means must be rationally related to the objective. *Manussier*, 129 Wn.2d at 673. The legislature has broad discretion in how it pursues its legitimate goals. *Manussier*, 129 Wn.2d at 673. The person challenging the law must establish that the classification is purely arbitrary. *Manussier*, 129 Wn.2d at 673.

Here, Ackerson has failed to establish that the classification between people supervised by the court and those supervised by DOC does not meet the standards of rational basis review. The standards for LFO compliance is the same. Or, at a minimum, Ackerson failed to show there is a difference.

The DOC hearings procedures for the failure to pay LFOs do not violate due process or equal protection because sufficient safeguards exist against imprisonment based on indigence. A rational basis exists. In addition, the imposition of the LFOs did not violate Ackerson's rights.

---

[10] There are generally four categories of people who pay LFOs: (1) those supervised by DOC; (2) those who are "supervised" by the County Clerk (RCW 9.94A.760); and (3) misdemeanants who are (a) supervised by a county or municipal probation office and (b) on bench probation.

The court properly found he had an ability to pay and that he would not be at risk of incarceration for failure to pay unless, after a hearing, the failure was found to be willful.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.