IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 75562-5-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RAYMOND SOMERA TIANGSON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: January 16, 2018 |
| | ) | |

2018 JAN 16 AM 10: 32
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

DWYER, J. — Raymond Tiangson appeals from the order of the trial court terminating his participation in King County's Enhanced Community Center for Alternative Programs (CCAP) and requiring him to spend 169 days in confinement. On appeal, Tiangson contends that the superior court erred by not providing him with a meaningful opportunity to be heard during his third CCAP violation hearing and by not entering written findings of fact in support of its ruling. He further contends that the superior court erred because its ruling was not supported by the record. Concluding that there was no error, we affirm.

I

Tiangson pleaded guilty to committing one count of residential burglary, one count of trafficking in stolen property in the first degree, and one count of

vehicle prowl in the second degree. As a sentencing alternative to 180 days in confinement, Tiangson was ordered to participate in 180 days of CCAP.[1]

The sentencing order incorporated by reference the conditions of conduct for persons sentenced into CCAP. One pertinent condition of conduct required that Tiangson attend, with strict compliance and punctuality, all CCAP programs and CCAP caseworker appointments.

Tiangson agreed to the CCAP conditions of conduct. In so doing, Tiangson acknowledged that he was subject to a graduated sanctions process for violations of the CCAP conditions of conduct. He further acknowledged that the sanction for a violation "will be determined by the CCAP Enhanced sanctioning grid according to the severity level of the violation and the number of violations committed." Tiangson also acknowledged that, "[i]f the violation you commit results in a sanction that falls outside of the sanctioning grid, you will be immediately removed from the Community Corrections Program and graduated sanctions violation process and a request will be sent to the court to place you in secure detention to await a hearing."

Tiangson was ordered to report to CCAP on February 1, 2016. He reported as ordered on the first day. However, during the rest of the month of February, Tiangson violated CCAP conditions of conduct on 11 occasions by not

_____

[1] CCAP is "a weekly itinerary . . . of structured programs" administered at the Yesler Building in downtown Seattle. There are two different CCAP tracks: CCAP Enhanced and CCAP Basic. Offenders ordered into CCAP Enhanced report in person to the Yesler Building daily, while those ordered into CCAP Basic report only by phone.
State v. Medina, 180 Wn.2d 282, 285, 324 P.3d 682 (2014) (alteration in original) (footnotes omitted).

appearing at CCAP or by arriving late without giving an allowable excuse. Consequently, CCAP officials removed Tiangson from CCAP due to his poor attendance rate and his lack of proper justification for his absences and tardiness. CCAP officials requested a warrant for his arrest.

Two months later, Tiangson was arrested and brought before the King County Superior Court for a hearing. At the hearing, Tiangson admitted to failing to attend CCAP. He explained that he had become sick and conceded that he should have contacted CCAP about his absences. The superior court judge reinstated Tiangson's participation in CCAP but warned him, "This is your last shot, Mr. Tiangson. You need to get this done."

Over the next week, in late April and early May, Tiangson failed to attend CCAP on one day and arrived late on five other days, all without giving an allowable excuse. As a result, CCAP officers removed Tiangson from CCAP, again due to his poor attendance and his lack of proper justification for his absences and tardiness. A warrant was issued for Tiangson's arrest.

Over three weeks later, Tiangson was arrested and brought before the superior court. Tiangson again admitted to failing to attend CCAP. He explained that his tardiness was due to transportation problems and he indicated that he planned to take public transportation to CCAP going forward. The superior court reinstated his participation in CCAP.

One week later, in early June, Tiangson twice failed to appear at CCAP or contact CCAP officials. He did not provide an explanation justifying his absence.

Accordingly, CCAP officials removed Tiangson from CCAP and requested a warrant for Tiangson's arrest.

One month later, Tiangson was arrested and brought before the superior court for a hearing before the superior court judge who had presided over his initial CCAP violation hearing. Tiangson admitted to not attending CCAP and stated that he had a medical excuse for not attending because he had been suffering from lower back pain related to a fall.

The superior court judge determined that Tiangson's medical excuse explanation was of the same type as the one that he had given her in April. Concluding that Tiangson's violations of the CCAP conditions of conduct were unexcused, the superior court judge issued an order terminating his participation in Enhanced CCAP. Tiangson received 11 days of credit for the time that he had attended CCAP and the superior court judge converted the remainder of his sentence to a term of incarceration.

## II

Tiangson contends that the superior court abused its discretion by terminating his participation in CCAP because it did not provide him with minimal due process during his third CCAP violation hearing.[2] We disagree.

"Revocation of a suspended sentence due to violations rests within the discretion of the trial court and will not be disturbed absent an abuse of

---

[2] The State contends that Tiangson's claim is moot because he is no longer imprisoned. We exercise our discretion and elect to consider the merits of Tiangson's appeal. In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012) (citing Born v. Thompson, 154 Wn.2d 749, 762-64, 117 P.3d 1098 (2005); Habeas Corpus of Monohan v. Burdman, 84 Wn.2d 922, 925, 530 P.2d 334 (1975)).

discretion." State v. McCormick, 166 Wn.2d 689, 705-06, 213 P.3d 32 (2009). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" McCormick, 166 Wn.2d at 706 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Proof of violations need not be established beyond a reasonable doubt but must only "reasonably satisfy" the trial court that the breach of condition occurred. State v. Badger, 64 Wn. App. 904, 908, 827 P.2d 318 (1992) (citing State v. Kuhn, 81 Wn.2d 648, 650, 503 P.2d 1061 (1972)). "The revocation of a suspended sentence is not a criminal proceeding, but rather an extension of the original criminal conviction." McCormick, 166 Wn.2d at 699. "Accordingly, an offender facing a revocation of a suspended sentence has only minimal due process rights because the trial has already occurred and the offender was found guilty beyond a reasonable doubt." McCormick, 166 Wn.2d at 700 (citing State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999)).

> The United States Supreme Court has determined that, in the context of parole violations, minimal due process entails: (a) written notice of the claimed violations; (b) disclosure to the parolee of the evidence against him; (c) the opportunity to be heard; (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation. Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). These requirements exist to ensure that the finding of a violation of a term of a suspended sentence will be based upon verified facts. Id. at 484.

Dahl, 139 Wn.2d at 683.

Here, Tiangson's third CCAP violation hearing occurred before the superior court judge who had presided over Tiangson's initial CCAP violation hearing. The third hearing began as follows:

> [PROSECUTOR]: [Tiangson's] sentence was to serve six months in custody, but 180 days of those were converted to CCAP. The allegations before the court are that he failed to attend CCAP, and this is the third violation hearing, essentially, that we're having before the court on the SRA calendar. He has approximately 150 days remaining on CCAP.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: So, Your Honor, Mr. Tiangson did have a medical excuse of fall. He did have -- he did have with him in jail and provided to my paralegal that he was seen at his doctor's, David Nguyen, on June 13th and treated for a lower back pain related to a fall. He wants to emphasize to the court that he knows he's had attendance problems with CCAP, but he's getting better. That he's improving. That he has -- he does benefit from both the structure and the program and that he, you know, has when he had previous absences, he has called his caseworker. He has a one-year-old son. He says he really is improving and that this is obviously much better for him and his family than jail. So it's not like he completely blows off his obligations. He does have severe difficulties and –
>
> THE COURT: Well, Ms. Jackson, let me tell you. This is the identical thing he told me back in April.
>
> [DEFENSE COUNSEL]: Mm-hmm.
>
> THE COURT: It's the identical story. And I took notes, so I'm going to convert him.
>
> [DEFENSE COUNSEL]: Okay.
>
> THE COURT: This is the third time.
>
> THE DEFENDANT: What's going on?
>
> [DEFENSE COUNSEL]: She's not going to return you to CCAP. She's going to have you spend –
>
> THE COURT: You told me the same thing back in April.
>
> [DEFENSE COUNSEL]: -- the remainder of your sentence in jail.
>
> THE DEFENDANT: But I have --
>
> THE COURT: Right. You said the identical thing last time.
>
> THE DEFENDANT: But I have my doctor papers.
>
> [DEFENSE COUNSEL]: I mean, he does have a paper from his doctor that he was seen on June 13th.

THE COURT: I'm sure he does.

Tiangson had a fair opportunity to be heard at his third CCAP violation hearing. Tiangson did not contest during the hearing—nor did he attempt to controvert on appeal—that he had violated the CCAP conditions of conduct. In addition, the record reflects that Tiangson and his counsel were afforded the opportunity to argue at the violation hearing—albeit unsuccessfully—that he had a medical excuse that justified his violations. The record does not support Tiangson's claim that the judge refused to consider his doctor's "note." To the contrary, it is clear that the court was aware of the note and did not credit it. The judge plainly knew that the doctor's opinion was based on information given to the doctor by Tiangson. And the judge did not consider Tiangson truthful, instead considering him to be a malingerer. The superior court allowed Tiangson a meaningful opportunity to be heard. He was simply unpersuasive. There was no error.[3]

Tiangson next contends that the superior court deprived him of his right to due process because it did not enter written findings of fact when it terminated his participation in CCAP and because its oral ruling did not allow for adequate appellate review. We disagree.

---

[3] The parties' appellate briefing do not contest whether Tiangson has a protected liberty interest in the termination of his participation in CCAP. We assume for the purposes of this order that he has such a liberty interest. Gangon v. Scarpelli, 411 U.S. 778, 781-82, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (revocation of probation); Morrissey, 408 U.S. at 481-482 (revocation of parole); In re Pers. Restraint of Bush, 164 Wn.2d 697, 703-04, 193 P.3d 103 (2008) (revocation of a conditional commutation); State v. Abd-Rahmaan, 154 Wn.2d 280, 282-83, 111 P.3d 1157 (2005) (revocation of community placement); Dahl, 139 Wn.2d at 683 (revocation of special sex offender sentencing alternative).

Our Supreme Court has held that an oral ruling during a revocation hearing satisfies due process when the "judge's oral opinion, transcribed in the statement of facts, provides an ample record of the evidence on which the judge relied and the reasons for the revocation." State v. Myers, 86 Wn.2d 419, 429, 545 P.2d 538 (1976) (citing Blake v. United States, 372 F. Supp. 186, 190 (M.D. Fla.1973), aff'd per curiam, 489 F.2d 1402 (5th Cir. 1974); People v. Scott, 34 Cal. App. 3d 702, 708, 110 Cal. Rptr. 402 (1973)).

Here, we were provided with the oral opinion of the superior court judge, as well as the entire record of the CCAP revocation proceedings. The superior court judge's oral ruling and the transcript of the proceedings provide "an ample record of the evidence on which the judge relied and the reasons" for terminating Tiangson's participation in CCAP. Myers, 86 Wn.2d at 429. There was no error.[4]

III

Tiangson next contends that the superior court abused its discretion by terminating his participation in CCAP because its decision was not supported by the record.

---

[4] Tiangson asserts that the superior court erred by terminating his participation in CCAP during his third CCAP violation hearing because the superior court deprived him of two statutory rights granted to him pursuant to RCW 9.94A.500. Tiangson first contends that the superior court denied him his right to allocute. There is no indication in the record that Tiangson gave "the court some indication of his wish to plead for mercy or offer a statement in mitigation of his sentence." State v. Canfield, 154 Wn.2d 698, 707, 116 P.3d 391 (2005). Indeed, "[t]he record shows that he was simply attempting to reargue the evidence introduced at his hearing." Canfield, 154 Wn.2d at 707-08. By not asserting a desire for formal allocution, Tiangson forfeited the right. Canfield, 154 Wn.2d at 708.

Tiangson next contends that the superior court denied him the statutory right to present argument during the third CCAP violation hearing. We disagree. As analyzed above, Tiangson was afforded a meaningful opportunity to be heard.

The superior court terminated Tiangson's participation in CCAP based on his admitted violations of CCAP conditions of conduct and his reliance on a medical excuse of a type that he had previously relied on to justify his past CCAP violations.

The superior court's reasoning was tenable. The record demonstrates that, by the time that Tiangson came before the superior court for his third CCAP violation hearing, Tiangson had already twice admitted to violating CCAP conditions of conduct concerning attendance and punctuality. He had previously relied upon medical and transportation excuses that, he claimed, prevented him from consistently attending CCAP. Therefore, when Tiangson came before the superior court for his third CCAP violation hearing and admitted to violating CCAP conditions of conduct concerning attendance and again alleged that he had a medical excuse for the violations, the superior court acted within its discretion by electing not to reinstate his participation in CCAP.

The superior court did not abuse its discretion. There was no error.[5]

Affirmed.

_____

We concur:

_____      _____

---

[5] During Tiangson's third CCAP violation hearing, the superior court judge misspoke by stating that, during each CCAP violation hearing, Tiangson had relied on a medical issue to excuse his violations. Because "[w]e may affirm the trial court on any basis the record supports," State v. Olmos, 129 Wn. App. 750, 755, 120 P.3d 139 (2005), we conclude that, notwithstanding this misstatement, the record amply supports the superior court's order terminating Tiangson's participation in CCAP.